SAMUEL T. BOYNTON *vs.* JOSEPH P. WOODBURY.

A. agreed in writing, that, whereas B. had bought of him twenty shares of stock for a certain sum, he in consideration thereof would " purchase back said shares, if B. so elects, in one year from this date, and upon the written request from B. and reassignment of said shares," and would " pay B. therefor the said sum and interest," " to be paid B. as aforesaid, provided he shall reassign to me said stock within one year as aforesaid, and not otherwise." *Held*, that it was at B.'s option, to be exercised within a year, whether to hold the shares as purchaser, or merely as collateral security for the loan of the sum paid by him; that this option was sufficiently exercised by his causing a written notice, that he requested A. to buy back the shares according to the terms of the agreement, to be left at A.'s house, eighteen days before the end of the year, after vainly endeavoring to find A. at his place of business, and understanding that he had left the state, which request was not revoked before the year ended; that the giving back of the shares and repayment of the loan were to be simultaneous acts, and B. was not bound to convey the stock out of his reach before receiving repayment; and that, in a suit on the agreement, brought after the end of the year, it was sufficient to entitle B. to recover in damages the full amount stipulated in the agreement to be paid by A., with interest, if, after proving the notice, and the neglect of A. to comply with it, it appeared that at and from the time of giving the notice B. continued to have the shares in his control and possession, and to be willing and ready to transfer them duly to A. before taking judgment.

CONTRACT, begun July 3, 1867, for breach of a written agreement signed by the defendant, as follows :

" Boston, July 2, 1866. This is to certify that, whereas Samuel T. Boynton has this day purchased of me, Joseph P. Woodbury, twenty shares of the capital stock of the New England Steam Car Company, being certificates numbered 37 and 38, for ten shares each, and said Boynton has paid me in cash for said twenty shares of stock the sum of one thousand dollars, Now therefore, in consideration of the above stated facts, I herebv

agree with said Boynton to purchase back said twenty shares of stock, if he so elects, in one year from this date, and upon the written request from said Boynton, and reassignment of said twenty shares of stock to me, free from all incumbrances; and I will pay said Boynton therefor the said sum of one thousand dollars, and interest on said sum, of sixty dollars, making a total sum of one thousand and sixty dollars, to be paid to said Boynton as aforesaid, provided he shall reassign said stock to me within one year as aforesaid, and not otherwise. And it is further provided, that, in case that any dividend on said stock shall be due or paid to said Boynton within the year aforesaid, then, in that case, the amount of said dividend shall be deducted from the one thousand and sixty dollars to be paid to said Boynton aforesaid."

The answer admitted the sale of the stock and receipt of the money by the defendant; and denied all the other allegations of the declaration.

At the trial in the superior court, before *Devens*, J., without a jury, the plaintiff testified to the execution and delivery of the writing by the defendant; and that, on June 14, 1867, after calling several times at the defendant's office in Boston without finding him, and after understanding that the defendant was absent from the state, he wrote a notice, dated June 11, 1867, and addressed to the defendant at West Roxbury, of which the following is all but the formal part:

" By your writing of July 2, 1866, you agreed, in consideration of my purchasing of you that day twenty shares of the capital stock of the New England Steam Car Company, being certificates numbered 37 and 38, for ten shares each, and of my paying you therefor the sum of $1000 cash, that you would purchase back said twenty shares in one year from said July 2, 1866, upon my written request and the reassignment of said twenty shares free from all incumbrances, and would pay me therefor the said sum of $1000, and sixty dollars interest, making a total of $1060, provided I should elect to reassign said stock within one year, and provided that any dividends which might be due or paid to me within the year aforesaid should be deducted from

the $1060 to be paid to me as aforesaid. Now therefore, this is to request you to purchase back said twenty shares of stock according to the terms set forth in said writing of July 2, 1866."

The plaintiff testified that he handed this notice to an expressman, in an envelope sealed and addressed to the defendant, and directed the expressman to leave it at the defendant's house; and there was further evidence tending to show that it was delivered at the defendant's house, to his daughter, by a servant of the expressman.

" A paper purporting to be the certificate of stock was also put in, and offered to the defendant, and read to the court. No proof was offered of its authenticity, or that the plaintiff ever received it of the defendant or the corporation. It was assigned on the back by the plaintiff" to the defendant, by an assignment expressed to be for value, and not dated. The plaintiff introduced no other evidence, and rested his case.

The defendant offered no evidence; but contended that the plaintiff had not shown a compliance with the terms of the written agreement, or made out a case which entitled him to recover. The judge ruled to the contrary, and found for the plaintiff with damages in the sum of $1060, with interest from July 2, 1867. The defendant alleged exceptions.

*J. L. Newton,* for the defendant. The plaintiff was to make a written request and reassign certain shares of stock; the defendant was to purchase back those particular shares, and no others; and the plaintiff was to elect within one year and to reassign. There is no evidence of reassignment of the same shares, or reassignment at all, within one year. The plaintiff should have tendered a reassignment within one year; and there is no evidence of tender. There is no sufficient evidence that the plaintiff's request to the defendant was ever brought to the defendant's knowledge. And finally, if the plaintiff was entitled to a verdict at all, the court was in error in its assessment of damages. The verdict should have been for the $1060 and interest, less the value of the stock. The suit was on a contract alleged to have been broken, and in awarding damages the court should not have disregarded the value of the stock left in the plaintiff's hands.

*L. Child,* for the plaintiff.

AMES, J.   If the contract between these parties is to be taken simply and literally as an undertaking on one side to sell, and on the other to buy, certain shares in a corporation, at a price and within a limit as to time previously agreed upon, some of the objections relied upon by the defendant would be of great force and weight.   To claim the benefit of an executory contract of that kind, and to be entitled to claim damages for a violation of it, the party intending to sell must allege and prove that, at the time appointed, he was ready and able to fulfil the contract on his part, and that he made a distinct tender of performance and literally offered to make the conveyance, but that the party who had agreed to buy refused to receive the stock or to fulfil his part of the agreement.   The stipulations would be mutual and dependent, and neither party could complain of the other without an explicit and full tender of performance on his own part.

But we think that this is not the true interpretation of the contract.   The form of the transaction is, that the plaintiff buys the shares of the defendant and then makes a contract that he will sell them to the defendant on certain terms and at a certain time.   The terms of the written contract, however, plainly show that in buying the stock the plaintiff reserved to himself for the term of an entire year the right to repent of his bargain and reclaim his money.   During the whole of that period it was exclusively at his option whether he should hold the stock as a purchaser, or whether the transaction should be a loan of one thousand dollars.   No note was taken ; and none was necessary in order to make the transaction, in substance and effect, a loan. The defendant's agreement is, in a certain contingency to purchase back the shares ; he is to refund the consideration, with interest, and the shares are to be reassigned to him ; that is to say, his contract is, to cancel the sale and return the money, with interest, if the plaintiff shall, in writing, in one year, require of him that he do so.   In substance, the transaction would differ very little from a mere loan of the money, upon the stock as collateral security, provided the plaintiff chose that such should be its character.   It depended upon the plaintiff's election, to be

expressed in writing in one year, whether it should be so con-
sidered, or whether it should stand as a consummated purchase.
On giving such a notice, according to the terms of the contract,
he seems to have a right to stand in the position of a creditor,
holding the stock as collateral security. He is to reassign the
shares, and the defendant to repay the money. The relation
between them becomes that of debtor and creditor, more prop-
erly than that of buyer and seller.

There can be no doubt that the written notice actually given
expressed with perfect distinctness the fact that the plaintiff had
made his election, and had decided not to keep the shares. The
giving back of the shares and the repayment of the money were
to be simultaneous operations. The plaintiff was not bound
literally to convey the stock and put it out of his reach before
he received the money. The defendant objects that this notice
was given before the year expired, and the case finds that it was
served about eighteen days before the expiration of that time.
By the terms of the contract, nothing could be said to be due
from the defendant until the end of the entire year, but there is
nothing on the face of the contract to show that the plaintiff
had not full liberty to decide at any time within the year upon
the alternative which the defendant's written obligation allowed
him. If the sale were defeasible, at his option, during the year,
it is no wrong to the defendant, and puts him to no inconven-
ience, that the plaintiff should have made his final election a
few days or a few weeks before the year expired. The evidence
reported tends to show that he had made several unavailing
attempts to find the defendant at his usual place of business,
and that the defendant had gone out of the state. We cannot
revise the finding of the judge who tried the case, as to the
facts; and he may have found, on the evidence reported, that the
defendant purposely avoided a tender from the plaintiff of a re-
conveyance. However that may be, the judge may well have
found that such a written notice, left at the defendant's house a
few days before the year expired, was, under the circumstances
of the case, a continuing notice or offer; that the plaintiff then
had, and continued until the moment of trial to have the shares

in his control and possession, and that at the trial he offered, and was able, to reconvey them to the defendant. We also assume, from the course of the argument, that the plaintiff offers and is now ready, before claiming any judgment in his favor, to place on the files of the court, for the use of the defendant, a written transfer of the shares to him, duly executed and stamped. In the view we take of the contract, the notice left at the defendant's house a few days before the year expired was not premature, and was a sufficient notice that the plaintiff was ready to reconvey the shares on the terms set forth in the contract We find no error in the rulings of the court.

*Exceptions overruled.*