EDWIN C. LITCHFIELD et al., Appellants, *v.* RICHARD IRVIN
et al., Respondents.

Plaintiffs transferred to defendants by receipted bill of sale certain railroad
bonds. They also executed and delivered, with the bill of sale, a guar-
anty in substance that the companies issuing the bonds should finish
their roads and be consolidated into one within one year; and in default
thereof they agreed to refund the sum received with interest upon return
of the bonds purchased. The roads were not finished within the year
and the companies made default in the payment of the interest coupons
maturing upon the bonds. Plaintiffs, at defendants' request and to pre-
vent the enforcement of the guaranty, paid the coupons, which were
transferred to them. Subsequently the companies being still embarrassed
proposed to compromise the interest accrued upon their bonds. Plain-
tiffs agreed to the proposal, but defendants required, as a condition of
their assent, and received from plaintiffs a written agreement that such
assent should in no wise prejudice defendants' rights under the guaranty,
but that it should remain in full force. Some three years after, defend-
ants notified plaintiffs of their intention to enforce the guaranty, but
that they would not commence proceedings if plaintiffs would pay the
past due coupons. No attention was paid to the notice and no proceedings
were taken to enforce the guaranty. The bonds having subsequently
risen in the market, defendants tendered the purchase-money and claimed
a return of the bonds, and upon defendants' refusal brought action to
compel such return. *Held,* that plaintiffs retained no option to require
a return of the bonds upon refunding the money, but that the option
was with defendants to determine whether the transaction should be an
absolute sale or a loan; that this option was not determined by any of

the subsequent transactions up to the time of the tender, and that, therefore, plaintiffs had no right of action.

(Argued May term, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of the defendants entered upon the decision of the court at Special Term.

This action was brought to establish a right on the part of the plaintiffs to redeem certain railroad bonds sold by the plaintiffs to the defendants on the twenty-third day of July, 1856, by receipted bill of sale, of which the following is a copy :

"NEW YORK, 23d July, 1856.

"Messrs. RICHARD IRVIN & Co.,

"Bought of E. C. & E. B. LITCHFIELD,

| | |
|---|---:|
| $100,000 1st mortgage convertible bonds of the Great Western railroad of Illinois : Numbers 345 to 364, 510 to 512, 514, 516, 518, 519, 526 to 546, 555 to 567, 587, 590 to 598, 609 to 625, 627, 628, 657, 658, 652, 668 to 674, @ 76½ .......................... | $76,500 00 |

$100,000 1st mortgage convertible bonds of the Lake Erie, Wabash and St. Louis and Toledo and Illinois railroad consolidated :

Numbers ⎫ 1,309, 1,328, 1,351 to<br>
        ⎪    1,356, 2,083 to 2,086,<br>
L. E. W. & ⎬  2,137 to 2,150, 2,173,<br>
St. L. R. R. ⎪  2,195 to 2,200, 2,222,<br>
        ⎭ to 2,240 ; 450 to 741, $68,000

| | |
|---|---:|
| Toledo and Illinois Railroad Co., 710 to 741 at 76½ .....,.............. | 32,000 |
| | 76,500 00 |
| | $153,000 00 |
| Interest allowed to 1st August, nine days..... | 267 75 |
| | $152,732 25 |

"Rec'd pay't.<br>"E. C. & E. B. LITCHFIELD."

As an inducement to the defendants to make the purchase the plaintiffs at the same time executed the following guaranty written on the back of the bill of sale and delivered therewith to the defendants:

"In consideration of the within purchase, and in consideration of one dollar to us in hand paid by Richard Irvin & Co., we hereby guarantee that the railroads called the 'Great Western railroad of Illinois,' and 'The Toledo and Illinois,' and 'Lake Erie, Wabash and St. Louis railroad,' the latter two known as the 'Toledo, Wabash and Western railroad,' shall be finished and in good order and operation within one year from this date, and shall be consolidated into one road, and in default of the above, or any part of it, we hereby jointly and severally agree to refund to Richard Irvin & Co. the sum of $152,732.25, received by us for the said bonds, in one year from this date, with interest at the rate of seven per cent, deducting therefrom such sums as said Richard Irvin & Co. may have collected as interest on said bonds, they returning to us the bonds purchased of us, as within, on receiving the money.

"NEW YORK, 23d *July*, 1856.

"E. B. LITCHFIELD.
"EDWIN C. LITCHFIELD,
"By his attorneys,
"E. B. LITCHFIELD,
"G. H. FORD."

The roads were not finished or consolidated within the year ending July 23, 1857, and the companies made default in the interest coupons maturing on the 1st of August following. Thereupon the defendants, who had purchased the bonds on behalf of certain principals residing in Glasgow, Scotland, proposed to the plaintiffs, whose liability under the guaranty had become fixed, to take up the coupons themselves as a measure which might prevent the owners of the bonds from directing an immediate enforcement of the guaranty. The plaintiffs accordingly paid these coupons, and held them in their own right, as obligations of the companies.

In February, 1858, the companies being still embarrassed, and unable to pay their coupons then due or to provide for interest thereafter to fall due, proposed to their bondholders to compromise two years' interest on their bonds, and to discharge such two years' interest by stocks and bonds of said companies, then not being at or near par, nor having the value of money. The plaintiffs agreed to the compromise, and applied to the defendants to consent to the same. The defendants, before they would give their consent, required the plaintiffs to execute a writing on the back of the bill of sale above set out, as follows:

" *Whereas,* ' The Great Western R. R. Co.' and the Toledo, Wabash and Western R. R. Co., within named, have each submitted to the bondholders, creditors and stockholders of said companies respectively, propositions with a view to the release of said companies from embarrassment and litigation, which proposition we have requested Messrs. Richard Irvin & Co., as holders of the within described bonds, to accede to and to sign the printed agreement submitted by the said companies respectively. Now, therefore, in consideration of the premises, we hereby agree with said Richard Irvin & Co., that their coming into said arrangements and signing said agreements shall in no way prejudice the within guaranty and agreement signed by us, but that the same shall remain in full force and obligation notwithstanding the execution by said Richard Irvin & Co. of said agreement.

" NEW YORK, *February 26th,* 1858.

" E. B. LITCHFIELD.
" EDWIN C. LITCHFIELD."

On the 18th May, 1861, the defendants notified the plaintiffs that they were instructed to enforce the guaranty, but would not commence proceedings if the plaintiffs would take up the past due coupons. Nothing came of this suggestion, and no proceedings were taken to enforce the guaranty. The roads were embarrassed and the bonds depreciated in market to below half their par value. The plaintiffs were

unable to respond, upon the guaranty, and desired to give real estate in discharge of it.

Matters remained in this position till after the breaking out of the war and the passage of the legal tender act in February, 1862. On the 14th June following the plaintiffs wrote, proposing to refund the purchase-money and claiming a return of the bonds. The defendants denied the claim thus made by the plaintiffs. Plaintiffs did nothing further till the year following, when they renewed their proposal and claim, March 17, 1863, and still more formally by letter of April 20, 1863, which they accompanied by a tender of $148,500 in legal tender notes. The right to claim the bonds was denied, and the tender was objected to as a tender, on the ground that it was made in paper currency.

The original purchase of the bonds was, as plaintiffs knew, made on behalf of Wm. Baird & Co., of Glasgow, Scotland, and on their account exclusively, and plaintiffs knew that, in all the subsequent transactions in respect to them, defendants were acting as agents for said principals.

In June, 1862, when plaintiffs' first proposal to take back the bonds was made (not accompanied, however, by any tender), the price of gold, as compared with legal tender notes, was about 104. In March and April, 1863, when the more formal letters were written, followed by the tender, it was about 150.

The market value of the bonds in 1857 and 1858, when the currency was gold and silver, or its equivalent, was forty-five per cent of their par value; and on the 18th of May, 1861, about sixty-five per cent; on the 14th of June, 1862, about ninety-four per cent; and in March and May, 1863, about five per cent above par. These values in 1862, and subsequently, were, however, the values in legal tender notes, not in specie currency.

The court at Special Term, without passing on other points made by the defendants, held that the plaintiffs had not, under the original contract, nor by reason of any of the other transactions, any right of redemption.

At the General Term one of the three judges was for affirmance upon the same ground, and the other two upon the ground of plaintiffs' great delay.

*Charles Tracy* for the appellants. The contract in this case was an alternative agreement. It was not at the election of either party. (Blackburn on Sales, 120, 151, 168, 196; Fry on Spec. Per., 287, § 654, 285, § 599; *Tower* v. *Barrett*, 1 Durn. & East., 133; *Thornton* v. *Wynn*, 12 Wheat., 184, 193; *Eno* v. *Woodward*, 4 Comst., 249; *Boynton* v. *Woodbury*, 101 Mass., 346; *Manuel* v. *Holdredge*, 6 Hand, 157; *Holt* v. *Rogers*, 8 Peters, 420; *Giles* v. *Bradley*, 2 John. Cases, 253.) The contract was not an absolute sale. (Pars. Mer. Law, 14; 2 Chitty on Con., 9th ed., 350; *Bradley* v. *Denton*, 3 Wis., 557; *Russell* v. *Nicoll*, 3 Wend., 112; *Shields* v. *Pettie*, 4 N. Y., 122; 1 Pars. Con., 440, 442; *Benedict* v. *Field*, 4 Duer, 154; 2 Kent Com., 468; 15 J. R., 349, 350; *Chamberlain* v. *Smith*, 8 Wright Penn., 421; *Reitz's Appeal*, 64 Penn., 162; *Calkins* v. *Falk*, 39 Barb., 620; *Scranton* v. *Booth*, 29 id., 171; *Bayley* v. *Bailey*, 5 Gray [Mass.], 505; *Van Wyck* v. *Leonard*, 18 Wend., 375; *Ellwood* v. *Diefendorf*, 5 Barb., 398, 410; 5 Cow., 67; 8 id., 429; *Hone* v. *Ward*, 4 Green, 195; *Leiard* v. *Smith*, 5 Hand, 618.) There is no provision in the contract which gives any option to defendants. (Chitty on Con., 9th ed., 63; 39 Barb., 620; *Sage* v. *Hazard*, 6 id., 179; *Livingston* v. *Miller*, 11 N. Y., 80; *Gilbert* v. *Danforth*, 6 id., 585; *Hall* v. *Delaplaine*, 5 Wis., 206; 101 Mass., 346; 4 Comst., 249.) Plaintiffs have taken all the necessary legal steps to entitle them to bring this action. (Willard's Eq., 297; *Trustees* v. *Robinson*, 21 N. Y., 234; *Worth* v. *Pepper*, 21 Wend., 633; *Carpenter* v. *Brown*, 6 Barb., 131; Chitty on Con., 9th ed., 688; *Miner* v. *Beekman*, 42 How. Pr., 33; *Bruce* v. *Tilson*, 25 N.Y., 194.)

*S. P. Nash* for the respondents. The contract imposed no obligations upon the purchasers. (*Camfield* v. *Wescott*, 5 Cow., 270, and cases in note.) The tender was insufficient.

(*Doloret* v. *Rothschild*, 1 Sim. & Stu., 590; act July 11, 1862, § 12; U. S. Stat. at Large, 532; Brightley's Dig. and Supp., 1165; 1 Story's Eq., §§ 64, 301; *Perkins* v. *Wright*, 3 Harr. & McH., 324.)   The action cannot be sustained as one of conversion by defendants.   (*Denny* v. *Manh. Co.*, 2 Den., 115; 5 id., 639; *Colvin* v. *Holbrook*, 2 Comst., 126.)

EARL, C.   The plaintiffs claim that the papers executed by them on the 23d of July, 1856, show that the bonds were not absolutely sold to the defendants, but that they were delivered to them as a security for the payment of the money at that time advanced by the defendants. To state their claim in another form, it is that the contract was an agreement to sell and to buy the bonds, if the rail-roads mentioned were completed and consolidated within one year; but if the roads were not completed and consolidated within one year, then the contract was to borrow and lend money at seven per cent interest—the bonds being held in pledge as security for the debt and to be returned to the borrower upon payment.

There is nothing in the oral evidence to sustain this claim. On the contrary, the evidence tends to show that the defendant refused to make a loan upon the security of the bonds and that the parties understood the transaction to be an absolute sale and purchase of the bonds.

The receipted bill of sale is in the ordinary form, indicating an absolute sale of the bonds.   To induce the defendants to make the purchase, the plaintiffs executed the guaranty, and as that and the bill of sale were executed at the same time, they must be both considered to arrive at the intention of the parties.   And yet the guaranty was an independent collateral agreement as much as the guaranty of payment upon the back of a note.

This guaranty was given for the benefit of the defendants, who believed that the completion and consolidation of the roads would add to the value of the bonds.   It gave no new rights to the plaintiffs.   They did not retain the option

to take back the bonds upon refunding the money paid to them with interest, during the year; the defendants could have sold the bonds and given an absolute title. In such event, however, they would have lost the benefit of the guaranty, as they could not have redelivered the bonds upon the payment of the money by the plaintiffs.

After default, the defendants were not obliged to resort to the guaranty. They had the option to keep the bonds or to tender them back to the plaintiffs and demand the money paid by them with interest.

The plaintiffs could undoubtedly, after the default, put the defendants to their election, either to keep the bonds or take the money and deliver the bonds by tendering the money and demanding the bonds.

These views of the original contract and transaction between the parties, I believe to be in entire harmony with the intention of the parties and to be sanctioned by authority. In *Canfield* v. *Wescott* (5 Cowen, 270), there were articles for the sale of land, by which the vendee covenanted to pay and the vendor covenanted to convey on payment; and the vendee agreed that if he failed in his covenants the contract should be void. The vendee failed to pay and the action was brought by the vendor for the money. It was held that the action lay, the contract being void only at the election of the vendor. To the same effect are the cases of *Moncius* v. *Sargent* and *Church* v. *Ayres*, reported in a note to *Canfield* v. *Westcott*.

The counsel for the appellants, in the learned and exhaustive brief submitted on their behalf, cited various authorities to sustain their construction of the contract between the parties. (*Thorton* v. *Ryan*, 12 Wheaton, 184; *Eno* v. *Woodward*, 4 Conn., 249; *Boynton* v. *Woodbury*, 101 *Mass.*, 346; *Manvel* v. *Holdredge*, 45 N. Y., 151.) But they are nearly all cases where, by the terms of the contract between the parties, the option was expressly given to one party or the other to declare void or rescind the contract. In *Eno* v. *Woodward*, A. agreed to sell to B. certain lands

and convey the same to him on a day named, and B. paid down the purchase-money. A. also agreed that, at the expiration of a year, if B. should desire it, he would pay back the money with interest. The court held that this was, in effect, an alternative agreement, either to sell and purchase land or to borrow or lend money, as B. might elect at the end of the year. There A., as the plaintiffs here, had no option, but B., as the defendants here, had the option to retain the property conveyed or to turn the transaction substantially into a loan of money. In *Boynton* v. *Woodbury*, A. agreed, in writing, that whereas B. had bought of him twenty shares of stock for a certain sum, he, in consideration thereof, would purchase back said shares if B. so elected in one year from date, and upon the written request from B., and reassignment of said shares, and would pay B. therefor the said sum and interest. It was held that it was B.'s option whether to hold the shares as purchased or merely as collateral security for the loan of the sum paid by him.

These authorities, instead of sustaining the theory of the plaintiffs, tend rather to sustain that of the defendants. Here the option was not, in terms, given to the defendants, but it was impliedly given. The contract, fairly construed, gives them the option to determine whether the transaction shall take the form of a loan of money, they holding the bonds simply as security, or whether it shall stand as an absolute sale of the bonds.

It only remains, therefore, for us to examine whether the defendants, by anything which they did after the 23d of July, 1856, determined their option and became holders of the bonds merely as security for the money advanced by them.

The railroads not having been completed and consolidated within the year, the conditions had happened which would enable the defendants, at their option, to enforce the plaintiffs' guaranty. The railroad companies made default in the payment of the interest coupons due August 1st, 1857. The defendants then informed the plaintiffs that if they would take up the coupons, the persons for whom the bonds were pur-

chased would not enforce the guaranty. Thereupon the plaintiffs paid the defendants for the coupons and took and held them against the companies. By this transaction the defendants did not exercise their election to become the creditors of the plaintiffs, simply holding the bonds as security. The plaintiffs took the coupons to prevent the defendants from, at once, exercising their election and enforcing the guaranty. The transaction will, at least, bear this construction, and it is as fully warranted by the circumstances as any other. It should, therefore, at this stage of the case, in support of the decision of the referee, be adopted.

On the 26th of February, 1858, nothing had occurred to deprive the defendants of their right of election under their agreement with the plaintiffs. They then had the right to hold the bonds as absolute purchasers or to return them to the plaintiffs and enforce their guaranty. Therefore, when the railroad company, being unable to meet the interest then past due, proposed to the bondholders to compromise two years' interest by accepting in lieu thereof stocks and bonds of the companies not then worth par, it was quite appropriate that the defendants should refuse to agree to the compromise without the consent of the plaintiffs. By thus surrendering the coupons for two years and taking stocks and bonds worth less than par, the loss by the transaction, if any, would have fallen upon them if they had not first procured from the plaintiffs their consent and the agreement of July 26, 1858, and as to such loss they could not have enforced the guaranty. The obvious intention of the parties was to preserve to the defendants their right to resort to the guaranty for their complete indemnity to the extent thereof in case they should at any time elect to do so.

The only other circumstance which is claimed by the plaintiffs to have determined defendants' election is the letter written by them May 18, 1861, in which they informed the plaintiffs that they were instructed to enforce the guaranty unless the plaintiffs would pay the past due coupons, with interest. They did not, however, proceed to enforce the guaranty.

Neither party acted upon the letter, and I am unable to see how anything contained in it can be construed into an election by defendants to hold the bonds as a mere security for a loan. It was, at most, a threat, which was not enforced.

I therefore reach the conclusion that nothing appears which in any way impairs the right of the defendants to hold the bonds as purchasers, and the judgment must, therefore, be affirmed with costs.

All concur.

Judgment affirmed.